[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-13473

Non-Argument Calendar

_____

MARK BUTTERFIELD,

Plaintiff-Appellant,

*versus*

JETBLUE AIRWAYS CORPORATION,
a foreign for-profit corporation,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:20-cv-60660-WPD

_____

Before WILSON, JILL PRYOR, and LUCK, Circuit Judges.

PER CURIAM:

Mark Butterfield sued his former employer, JetBlue Airways Corporation, for retaliation under the Florida Whistleblower Act, Fla. Stat. § 448.102. Butterfield appeals the district court's order dismissing his complaint because it was barred by the doctrine of res judicata and also failed to state a claim for relief. We affirm because Butterfield's complaint failed to state a claim.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Butterfield was a flight attendant for JetBlue. He was hired in 2004 and worked out of the Fort Lauderdale-Hollywood International Airport in Broward County, Florida.

In August 2013, Butterfield sued JetBlue in Florida state court. Butterfield alleged that in 2012 he had objected to, and refused to participate in, violations of federal aviation safety regulations after JetBlue let an unruly passenger onto a flight. JetBlue retaliated against him in violation of the Florida Whistleblower Act, Butterfield alleged, by suspending him from duty.

In August 2018, Butterfield's attorney deposed a witness in the ongoing lawsuit. Butterfield still worked for JetBlue at the time of the deposition. Butterfield's attorney showed the witness a flight manifest to impeach her claim that she hadn't been on the flight with the unruly passenger. The witness's lawyer angrily asked

Butterfield's attorney how he had obtained the flight manifest and said that JetBlue would find a reason to fire Butterfield.

In September 2018, an employee in JetBlue's Human Resources department called Butterfield to talk about the flight manifest. Butterfield replied that "he was not in possession of the document."

On October 12, 2018, Butterfield's supervisor ordered him to meet with Marilyn Mendez, who was also in JetBlue's Human Resources department. Mendez told Butterfield that she needed to ask him questions about an ongoing JetBlue investigation. Mendez showed Butterfield the JetBlue policy requiring him to cooperate with internal investigations or face termination. Butterfield told Mendez that he wanted to cooperate but couldn't discuss anything about his lawsuit without first talking to his attorney. When Butterfield requested that his attorney be present during the questioning, Mendez refused. Mendez agreed to let Butterfield call his attorney but told him that he wasn't cooperating. Butterfield left the meeting and spoke with his attorney about how to deal with the situation.

After consulting with his attorney that same day, Butterfield called Mendez to tell her that he would cooperate with the investigation, but his calls went to voicemail. Butterfield then emailed Mendez, also on that same day, and said that he would cooperate even though the investigation was "retaliatory" and "illegal." On October 18, 2018, Butterfield's supervisor told him that he was suspended for failing to cooperate with the investigation. Mendez

then emailed Butterfield and told him that because he had refused to answer her questions during the meeting, JetBlue was suspending him. In November 2018, JetBlue formally terminated Butterfield for violating company policy.

By this point, JetBlue had moved for summary judgment in Butterfield's ongoing state court lawsuit. In February 2019, Butterfield moved the state trial court for leave to file an amended complaint raising a retaliation claim under the Florida Whistleblower Act because of his termination. The state trial court granted JetBlue's motion for summary judgment and denied Butterfield's motion to amend his complaint as moot. The state trial court dismissed Butterfield's claims with prejudice and entered final judgment for JetBlue. Butterfield did not appeal the summary judgment for JetBlue to the state appellate court.

In March 2020, Butterfield again sued JetBlue in Florida state court. JetBlue removed this second lawsuit to federal court. In his amended complaint, Butterfield brought a single retaliation claim under the Act. Butterfield alleged that the active pursuit of his first lawsuit against JetBlue, including the deposition involving the flight manifest, was a protected activity under the Act. He also alleged that he engaged in protected activity when he objected to Mendez's request that he discuss the flight manifest without his attorney being present, which amounted to witness tampering. JetBlue violated the Act, Butterfield alleged, by retaliating against him for these protected activities and firing him.

JetBlue moved to dismiss Butterfield's complaint for three reasons.  First, JetBlue argued that, because the state court dismissed Butterfield's first lawsuit after he attempted to amend his complaint to raise the retaliation claim that he was raising here, his new lawsuit was barred by the doctrine of res judicata.  Second, JetBlue argued that the district court lacked jurisdiction under the *Rooker-Feldman*[1] doctrine to review the state court's final judgment in Butterfield's first lawsuit, and Butterfield's second lawsuit was just "an end-round around the state court's judgment."  And third, JetBlue argued that Butterfield's complaint failed to state a claim under the Act.

The district court granted JetBlue's motion to dismiss.  The district court concluded that Butterfield's second lawsuit was barred by the doctrine of res judicata because he had attempted to raise in his first lawsuit the same retaliation claim he was raising here, but the state trial court had denied his motion to amend the complaint.

The district court also concluded that Butterfield's complaint failed to state a claim because it did not plausibly allege that he had engaged in statutorily protected activity.  As to Butterfield's first lawsuit, the district court concluded that he had "failed to allege that he objected to or refused to participate in an actual violation of the law."  As to Butterfield's allegation that he objected to

---

[1] *See Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983).

Mendez's threats to fire him, the district court also concluded that he did not plausibly allege that this was "an actual violation of the law."

Butterfield appeals the district court's dismissal order.

## STANDARD OF REVIEW

We review de novo whether we have jurisdiction under the *Rooker-Feldman* doctrine. *Lozman v. City of Riviera Beach*, 713 F.3d 1066, 1069 (11th Cir. 2013). We also review de novo the district court's dismissal of a complaint for failure to state a claim. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Our review has two steps: (1) we "eliminate any allegations in the complaint that are merely legal conclusions"; and (2) for any "well-pleaded factual allegations, we assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Am. Dental*, 605 F.3d at 1290 (cleaned up).

## DISCUSSION

Butterfield argues that the district court erred in concluding that: (1) the doctrine of res judicata barred his second lawsuit against JetBlue; and (2) he failed to state a claim under the Act.

JetBlue responds that res judicata barred Butterfield's second law-suit and, even if it didn't, Butterfield failed to state a claim. JetBlue also contends, as an alternative basis for affirmance, that Butter-field's second lawsuit was barred by the *Rooker-Feldman* doctrine. We conclude that the *Rooker-Feldman* doctrine doesn't bar Butterfield's complaint, and we assume, without deciding, that res judicata doesn't apply here. We nevertheless affirm. The district court correctly concluded that Butterfield's complaint failed to state a claim.

## The Rooker-Feldman *Doctrine*

JetBlue argues that Butterfield's retaliation claim is barred under the *Rooker-Feldman* doctrine because his second lawsuit re-litigates a claim that was decided in JetBlue's favor by the state court in his first lawsuit. The *Rooker-Feldman* doctrine "is a juris-dictional rule that precludes the lower federal courts from review-ing state court judgments." *Alvarez v. Att'y Gen.*, 679 F.3d 1257, 1262 (11th Cir. 2012). In federal courts, "jurisdiction takes prece-dence over the merits. Unless and until jurisdiction is found, both appellate and trial courts should eschew substantive adjudication." *Belleri v. United States*, 712 F.3d 543, 547 (11th Cir. 2013) (citation omitted). Because a district court lacks jurisdiction where *Rooker-Feldman* applies, we first consider whether the *Rooker-Feldman* jurisdictional bar applies before we reach the merits of Butterfield's claim.

"The *Rooker-Feldman* rule bars 'a party losing in state court . . . from seeking what in substance would be appellate review of

the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights.'" *Rohe v. Wells Fargo Bank, N.A.*, 988 F.3d 1256, 1262–63 (11th Cir. 2021) (quoting *Johnson v. De Grandy*, 512 U.S. 997, 1005–06 (1994)). In other words, this doctrine "eliminates federal court jurisdiction over those cases that are essentially an appeal by a state court loser seeking to relitigate a claim that has already been decided in a state court." *Target Media Partners v. Specialty Mktg. Corp.*, 881 F.3d 1279, 1281 (11th Cir. 2018).

But the *Rooker-Feldman* jurisdictional bar is "a narrow one." *Id.* As we have recently said, "it will almost never apply." *Behr v. Campbell*, 8 F.4th 1206, 1212 (11th Cir. 2021). "Only when a losing state court litigant calls on a district court to modify or 'overturn an injurious state-court judgment' should a claim be dismissed under *Rooker-Feldman*; district courts do not lose subject matter jurisdiction over a claim 'simply because a party attempts to litigate in federal court a matter previously litigated in state court.'" *Id.* at 1210 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292–93 (2005)).

To determine whether a party's federal claim "invite[s] rejection of a state court decision," we ask whether the claim was "one actually adjudicated by a state court" or one "'inextricably intertwined' with a state court judgment." *Target Media*, 881 F.3d at 1281. But, as we have recently clarified, "considering whether a claim is 'inextricably intertwined' with a state court judgment is not a second prong of the analysis." *Behr*, 8 F.4th at 1212. Rather,

"it is merely a way of ensuring that courts do not exercise jurisdiction over the appeal of a state court judgment simply because the claimant does not call it an appeal of a state court judgment." *Id.*; *see also id.* at 1211 (explaining that because the *Rooker-Feldman* doctrine "bars all appeals of state court judgments" to a federal district court, a plaintiff cannot circumvent this bar by "call[ing] the appeal something else"); *May v. Morgan Cnty. Ga.*, 878 F.3d 1001, 1005 (11th Cir. 2017) (explaining that a "state court loser cannot avoid *Rooker-Feldman's* bar by cleverly cloaking her pleadings in the cloth of a different claim").

Here, the state trial court didn't actually adjudicate Butterfield's retaliation claim under the Florida Whistleblower Act arising from his 2018 termination. Because this claim was absent from Butterfield's complaint in his first lawsuit, the state trial court's summary judgment didn't include this claim. Although Butterfield moved for leave to amend his complaint in state court to raise a retaliation claim identical to the one in his second lawsuit, the state trial court didn't rule on this motion on the merits. Rather, it denied Butterfield's motion for leave to amend as "moot." Under Florida law, an "issue is moot when the controversy has been so fully resolved that a judicial determination can have no actual effect." *See Godwin v. State*, 593 So. 2d 211, 212 (Fla. 1992). The state trial court's denial of the motion as moot therefore wasn't an adjudication on the merits of the proposed retaliation claim. *See id.* Thus, Butterfield's second lawsuit in federal court didn't complain of an injury "caused by the judgment" in his first lawsuit in

state court and didn't call for the district court to "modify" or "overturn" that judgment. *Behr*, 8 F.4th at 1210, 1212.

Nor is Butterfield's retaliation claim in his second lawsuit inextricably intertwined with the state court judgment. In his first lawsuit, Butterfield alleged that he engaged in protected activity in 2012 by objecting to JetBlue allowing an unruly passenger onto a plane, and he alleged that JetBlue retaliated against him by suspending him. In his second lawsuit, Butterfield alleged that he engaged in protected activities by filing his first lawsuit in 2013, litigating that case, and objecting in 2018 to JetBlue's efforts to force him to discuss the flight manifest. Butterfield alleged that JetBlue retaliated against him in 2018 by terminating him. Butterfield's two lawsuits "present distinct issues," involving different acts on his part that were allegedly protected under the statute, and different acts on JetBlue's part that allegedly constituted retaliation. *See Target Media*, 881 F.3d at 1287. We cannot say that Butterfield in his second lawsuit in federal court effectively appealed the state court's judgment while calling that appeal "something else." *See Behr*, 8 F.4th at 1211.

Butterfield's second lawsuit didn't ask the district court to "review or reject" the state court's judgment in his first lawsuit "rendered before the district court litigation began." *See id.* at 1212. Because this case doesn't fall within "*Rooker-Feldman's* narrow boundaries," the district court had jurisdiction. *See id.* at 1211.

### The Florida Whistleblower Act

The district court concluded that Butterfield failed to state a claim under the Florida Whistleblower Act. Butterfield argues that the district court misinterpreted the Act and applied the wrong standard to his claim.

Under the Act, an "employer may not take any retaliatory personnel action against an employee because the employee has" "[o]bjected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation." Fla. Stat. § 448.102(3) (2020). Florida courts have said that "retaliation claims under the [Act] are analyzed in the same manner as Title VII retaliation claims." *See Aery v. Wallace Lincoln-Mercury, LLC*, 118 So. 3d 904, 912 (Fla. Dist. Ct. App. 2013) (citation omitted).

To establish a prima facie claim under the Act, the plaintiff must show that: "(1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) there is a causal relation between the two events." *Chaudhry v. Adventist Health Sys. Sunbelt, Inc.*, 305 So. 3d 809, 814–15 (Fla. Dist. Ct. App. 2020) (citation and quotation marks omitted). To satisfy the standard's first prong, the plaintiff must show that he "objected to or refused to participate in (i) an illegal activity, policy, or practice of an employer, (ii) illegal activity of anyone acting within the legitimate scope of their employment, or (iii) illegal activity of an employee that has been ratified by the employer." *Aery*, 118 So. 3d at 916 (cleaned up).

Florida's intermediate appellate courts disagree about whether this first prong requires the employee to show an actual violation of the law, and the Florida Supreme Court has not resolved the disagreement. The Fourth District Court of Appeal held in *Aery* that an employee satisfies this first prong by showing that he had "a good faith, objectively reasonable belief that his activity is protected by the statute." *Id.* (cleaned up). This is the standard that Butterfield asks us to apply. But the Second District Court of Appeal has said that the first prong requires the employee to "prove that he objected to an actual violation of law or that he refused to participate in activity that would have been an actual violation of law." *Kearns v. Farmer Acquisition Co.*, 157 So. 3d 458, 466 (Fla. Dist. Ct. App. 2015). This is how the district court construed the prima facie case's first prong. JetBlue urges us to do the same. We need not resolve whether we should follow *Aery* or *Kearns*; even under *Aery*'s "good faith" standard, the standard Butterfield asks us to apply, his complaint failed to state a claim under the Act.[2]

---

[2] We note that the Fourth District Court of Appeal has said that it may need to reconsider its decision in *Aery* in light of *Kearns*. *See Usher v. Nipro Diabetes Sys., Inc.*, 184 So. 3d 1260, 1262 (Fla. Dis. Ct. App. 2016) (Gross, J., concurring) (explaining that it was not necessary in that case to reconsider *Aery*, which "may conflict with the thoughtful analysis in" *Kearns*, because the plaintiff pleaded actual violations of law); *see also LE Publ'ns, Inc. v. Kohl*, 298 So. 3d 642, 646–47 (Fla. Dist. Ct. App. 2020) (concluding that because the defendant waived the issue of whether "the plaintiff's burden [was] to establish either an actual violation or a reasonable belief of a violation" of law, whether the court should revisit *Aery* was "a question for another day").

Butterfield alleged that he engaged in protected activity under the Act by filing his first lawsuit in state court against JetBlue, taking a deposition in furtherance of that lawsuit where his attorney produced the flight manifest, and objecting to Mendez's request that he discuss the flight manifest on pain of termination. None of these activities supports a claim under the Act.

As to Butterfield's first lawsuit against JetBlue, it was filed in 2013 and he wasn't terminated until November 2018. His complaint contains no allegations from which we can plausibly infer that the filing of this first lawsuit was the cause of his termination. In a Title VII retaliation case, the "burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). "But mere temporal proximity, without more, must be 'very close,'" and a gap of just "three to four month[s]" "between the statutorily protected expression and the adverse employment action is not enough." *Id.* (citation omitted). Because the standards governing a Title VII retaliation claim apply to a prima facie retaliation claim under the Florida Whistleblower Act, *see Aery*, 118 So. 3d at 912, Butterfield failed to plausibly allege that his filing of his first lawsuit in 2013 was the cause of his termination five years later in 2018.

As to the 2018 deposition in his first lawsuit, Butterfield's second lawsuit alleged that his attorney tried to impeach a witness with a flight manifest to "demonstrate that the [witness] was actually on the subject flight when she was claiming that she had not

been." Butterfield didn't allege that, in conducting this impeachment, he was objecting to or refusing to participate in an activity on JetBlue's part that Butterfield reasonably believed violated the law. Nor did Butterfield allege that the JetBlue employee he was deposing broke the law in the legitimate scope of her employment or that JetBlue had ratified the illegal conduct she had engaged in. Thus, Butterfield failed to allege that the taking of this deposition was a protected activity under the Act. *See id.* at 916.

Finally, as to Butterfield's meeting with Mendez, he alleged that his objections to her demand that he talk about the flight manifest was a protected activity because her threat to terminate him if he refused was witness tampering, in violation of Florida Statutes section 914.22(1)(a). We disagree. Witness tampering requires proof that a person threatened another with the intent to cause or induce any person to "[w]ithhold testimony, or withhold a record, document, or other object, from an official investigation or official proceeding." Fla. Stat. § 914.22(1)(a). Butterfield didn't allege that Mendez threatened him with the intent to cause him (or anyone else) to withhold evidence in an official proceeding. Rather, he alleged that she tried to "force him" to talk about the flight manifest. Because Florida's witness tampering statute criminalizes efforts to prevent—rather than compel—the disclosure of information, any belief on Butterfield's part that Mendez was breaking the law wasn't "objectively reasonable." *See Aery*, 118 So. 3d at 916.

20-13473                    Opinion of the Court                    15

Because Butterfield's complaint in his second lawsuit against JetBlue failed to state a claim under the Act, we affirm the district court's order dismissing it.

**AFFIRMED**.